IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ROOSEVELT CAYMAN ASSET COMPANY II**,

    Plaintiff,

    v.

**FEBIAN HEREDIA MERCADO,** *et al.*,

    Defendant.

Civil No. 15-2314 (BJM)

**OPINION AND ORDER**

    Plaintiff Roosevelt Cayman Asset Company II ("Cayman") filed a complaint against Febian Heredia Mercado and Clartiza Vera Nieves ("Mortgagors") for collection of monies and mortgage foreclosure. Docket No. 1. Defendants moved for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Docket No. 17, arguing that the complaint falls short of alleging that Cayman complied with Consumer Financial Protection Bureau ("CFPB") regulations. *Id.* at 2. Cayman filed a response to the motion to dismiss, Docket No. 23, and Mortgagors filed a reply to this response. Docket No. 26. The parties have consented to proceed before a magistrate judge. Docket Nos. 18, 22. For the reasons set forth below, the motion is **DENIED**.

**BACKGROUND**

    Cayman's complaint alleges that on March 6, 2004, Mortgagors subscribed a mortgage note payable to RG Premier Bank of Puerto Rico or to its order, for the principal amount of $144,000.00, with a 6.25% annual interest rate. Docket No. 1 at 2 ¶ 6. The note was secured by a first mortgage constituted by deed number 140, executed in Arecibo, Puerto Rico before Notary Public Kermit R. Troche Mercado (Loan Number 800000666). *Id.* Cayman alleges it is the present owner and holder of the note and mortgage deed, which is duly recorded at page 195 of volume 510 of the Utuado Registry of Property, Utuado Section, and that Mortgagors are the owners of the mortgaged property according to the Registry of Property and Cayman's best knowledge and belief. *Id*. at 3 ¶¶ 8–9.

Cayman alleges Mortgagors breached the loan repayment obligations by failing to make the agreed-upon payments. Id. at 3 ¶ 10. As of September 3, 2015, Mortgagors owe to Cayman: $119,340.35 in principal, accrued interest which continues to accrue at the annual rate of 6.125% until full payment of the debt, accrued late charges, and any other advance, charge, fee, or disbursements made by Cayman on behalf of Heredia, plus costs and ten percent attorney fees. *Id*. Cayman alleges its "efforts to try and collect all outstanding amounts have been unsuccessful." *Id*. at 3 ¶ 11. Cayman seeks payment of the amounts detailed above, or on default, that the property be sold at public auction and the money due to Cayman be paid from the proceeds of the sale. *Id*. 4 ¶ 12.

Mortgagors moved to dismiss for failure to state a claim upon which relief could be granted, arguing that "Cayman's complaint falls short of alleging that it complied with the [CFPB] rules, which constitute a *sine qua non* requisite to file a foreclosure complaint." Docket No. 17 at 2; *see* Fed. R. Civ. P. 12(b)(6). Mortgagors state that Cayman did not allege that it provided written notification of foreclosure alternatives to Mortgagors prior to filing its complaint, as required by CFPB rules. *See* 12 C.F.R. § 1024.39(b). Mortgagors argue that instead of complying with the CFPB's rules, "[the complaint] simply alleges that [Cayman's] 'efforts to try to collect all outstanding amounts have been unsuccessful.'" *Id.* at 5; *see* Docket No. 1 at 3 ¶ 11. Mortgagors indicate that the applicable CFPB rules require more than mere collection efforts to commence a foreclosure proceeding. Therefore, Mortgagors posit that the complaint does not set forth sufficient factual allegations respecting each material element necessary to sustain recovery under some actionable legal theory. Docket No. 17 at 5–6.

In its response to defendants' motion to dismiss, Docket No. 23, Cayman contends that as the real party in interest, it is not required, at this stage of proceedings, to describe or detail "all of the steps under the requirements of the [CFPB] and/or under the terms of the loan documents it took before accelerating the debt and filing the complaint." Docket No. 23 at 2 ¶ 5. Cayman further argues that it has set forth all of the factual allegations necessary to sustain recovery, including: an establishment of jurisdiction, a description of the note executed by Mortgagors, a description of

the mortgage, a description of the real property over which the mortgage was executed, an allegation that it is the owner and holder of the note, an allegation that Mortgagors are the owners of the mortgaged property, an allegation that Mortgagors defaulted on the loan repayment obligation, an explanation of the outstanding debt, and a notice to Mortgagors that Cayman will file a *lis pendens* in the Registry of Property. *Id.* at 3–4 ¶¶ 13–14.

Mortgagors replied that Cayman does not contest the key facts supporting the motion to dismiss. Docket No. 26. Additionally, in a letter dated January 20, 2016, after the complaint was filed, Mortgagors received an invitation from Rushmore Loan Management Services ("Rushmore") to evaluate foreclosure alternatives. On February 8, 2016, Mortgagors formally accepted Rushmore's invitation and requested access to a loss mitigation application. *Id.* at 1–3. To this date, Mortgagors have not received an answer from Rushmore. Docket No. 26 at 3. Mortgagors allege that Cayman cannot continue foreclosure while Rushmore simultaneously considers their application because this would constitute illegal dual tracking (a practice where servicers institute foreclosure proceedings at the same time that a borrower in default seeks a loan modification). *Id.* at 2, 4 (citing *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014); 12. C.F.R. § 1024.41(f)(2)).

## DISCUSSION

Mortgagors argue Cayman's complaint should be dismissed for failure to state a claim upon which relief can be granted because Cayman was required to allege compliance with the newly created rules to state a claim for foreclosure. Docket No. 17; Docket No. 26; *see* Fed. R. Civ. P. 12(b)(6). Mortgagors also argue that because Cayman cannot legally continue the foreclosure while they await acceptance or denial for the application, Cayman does not have a cause of action. Docket No. 26 at 4.

### *12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This rule does not require detailed or elaborate factual allegations, but a pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")).

A trial court considering a Rule 12(b)(6) motion accepts as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in the defendant's favor. To survive dismissal, a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). Mere conceivability that the plaintiff is entitled to relief based on the factual allegations presented is not sufficient. *Iqbal*, 550 U.S. at 662 (citing *Twombly*, 550 U.S. at 567); *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 133 (D.P.R. 2007). Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 662.

***Cause of Action***

In this diversity action, Puerto Rico law applies. *See CitiMortgage, Inc. v. Rivera-Anabitate*, 39 F. Supp. 3d 152, 154 (D.P.R. 2014). It is well settled under Puerto Rico law that "[a] person receiving money or any other perishable thing on loan acquires its ownership, and is bound to return to the creditor an equal amount of the same kind and quality." Puerto Rico Civil Code, Article 1644, P.R. Laws Ann. tit. 31, § 4571. *See Espino v. Frias*, No. 139, 1904 WL 3781 (P.R. Dec. 19, 1904). Further, "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Puerto Rico Civil Code, Article 1044, P.R. Laws Ann. tit. 31, § 2994. Therefore, courts may not relieve a party of its agreed-upon contractual obligations. *See Cerveceria Corona v. Commonwealth Ins. Co.*, No.

R-83-418, 1984 WL 270942 (P.R. Apr. 26, 1984); *Hennes v. Sun Life Assurance Co. of Canada*, 291 F. Supp. 670, 673 (D.P.R. 1968).

A mortgage "directly and immediately binds an estate and the rights on which it is imposed, whoever its owner or titleholder may be, to the fulfillment of the obligation for the security of which it was constituted." Mortgage Law of 1979, Article 155, P.R. Laws Ann. tit. 30, § 2551. Puerto Rico's Civil Code additionally states that "[a] mortgage directly and immediately subjects the property on which it is imposed, whoever its possessor may be, to the fulfillment of the obligation for the security of which it was created." *Roosevelt Cayman Asset Co. v. Brea*, Civil No. 15-1653 (CVR) 2016 WL 1716837, at *3 (D.P.R. April 28, 2016) (citing Puerto Rico Civil Code, Article 1775, P.R. Laws Ann. tit. 31, § 5043); *see also Cristy v. Banco Territorial y Agrícola*, 11 P.R.R. 525 (1906). "The real right of a mortgage, once constituted subject to the mortgaged good, grants whoever is its title holder or possessor the power to demand the fulfillment of the obligation that it warranties, with preference corresponding to the degree of registration." *Brea*, 2016 WL 1716837, at *3 (internal citations omitted).

Under Puerto Rico law, the elements of a cause of action for breach of contract are: (1) a valid contract, (2) a breach by one of the parties to the contract, and (3) resulting damages. *Mega Media Holdings, Inc. v. Aerco Broadcasting Corp.*, 852 F. Supp. 2d 189, 200 (D.P.R. 2012) (quoting *Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 24 (1st Cir.2009) (citing P.R. Laws Ann. tit. 31, § 3391; *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996)); *Bianchi–Montana v. Crucci–Silva*, 720 F. Supp. 2d 159, 164 (D.P.R. 2010) (internal citations omitted))).

*CFPB Regulations*

The Mortgage Servicing Rules under Regulation X were promulgated by the CFPB pursuant to section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. Regulation X became effective on January 10, 2014, and is codified at 12 C.F.R. 1024. The pertinent regulations require, among other things, that loan servicers provide to borrowers a written notification of foreclosure alternatives after the borrower's second consecutive missed payment. 12 C.F.R. § 1024.39(b).

The notice must explain "loss mitigation" options (such as changing the interest rate, extending the terms of the loan, deferring or forgiving the principal, or coming up with some other alternative payment plan) and how to obtain more information about these options from the servicer. 12 C.F.R. § 1024.39(b)(2). The regulations restrict a servicer from moving for a foreclosure judgment or an order of sale if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by law for a judicial foreclosure but more than 37 days before a foreclosure sale, unless: (1) the servicer informs the borrower that the borrower is not eligible for any loss mitigation option; (2) the borrower rejects all loss mitigation options offered by the servicer; or (3) the borrower fails to comply with the terms of an agreement on a loss mitigation option. 12 C.F.R. § 1024.41(g).

A borrower may enforce the provisions of Regulation X pursuant to Section 6(f) of RESPA, 12 U.S.C. § 2605(6)(f), by bringing suit against the servicer. 12 C.F.R. § 1024.41(a). These rules subject servicers and lenders to sanctions in the form of money damages if they commence or continue the prosecution of claims for foreclosure and sale in cases where the borrower may be eligible for a loan modification or other loss-mitigation alternatives. *See* 12 C.F.R. §§ 1024.39–1024.41; 12 U.S.C. § 2605(6)(f) ("[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . an amount equal to the sum of and actual damages to the borrower as a result of the failure; and any additional damages . . . in an amount not to exceed $2000.00."). But Regulation X does not provide for injunctive relief. *Clark v. Ocwen Loan Servicing, LLC*, No. 1:15-cv-659, 2015 WL 6159447, at *6 (W.D. Mich. October 20, 2015); *Caggins v. Bank of N.Y. Mellon*, No. 1511124, 2015 WL 4041350, at *2 (E.D. Mich. July 1, 2015) ("[t]here is no provision found in RESPA under which [p]laintiff can seek to have foreclosure proceedings nullified, or force [d]efendants to negotiate a loan modification."); *Ayala v. Pacific Coast National Bank*, No. 5:16-cv-00723, 2016 WL 1700376, at *2 (C.D. Cal. April 27, 2016) ("[a]s to the [RESPA] claim, it does not appear that the Act provides for injunctive relief, and therefore cannot be used to enjoin (even temporarily) the impending foreclosure.") (internal citations omitted). While CFPB regulations "obligate some mortgage foreclosure plaintiffs to

conform to review standards . . . they do not provide defendant mortgagors with any viable defense to a . . . mortgage foreclosure action. Instead, the regulations merely provide a federal monetary remedy . . . ." *Federal Nat'l Mortg. Ass'n v. Karastamatis*, No. 45992-09, 2016 WL 3583881, at *2 (N.Y. Sup. Ct. June 20, 2016) (citing 12 C.F.R. § 1024.41; 12 U.S.C. § 2605(f)).

Mortgagors have not yet completed or started a loss mitigation application, nor has a foreclosure sale date been set. Many of the provisions within 12 C.F.R. § 1024 *et seq*. prohibit a servicer from continuing a foreclosure proceeding only after a complete loss mitigation application has been submitted by the borrower. *See* 12 C.F.R. § 1024.41(g). Further, even if it were found that Cayman violated any of the CFPB regulations, the statute does not provide for injunctive relief or a stay or adjourning of the prosecution of the impending foreclosure action. *Karastamatis*, 2016 WL 3583881, at *2; *Ayala*, 2016 WL 1700376, at *2. This indicates that a servicer is not required to allege compliance with these regulations in a foreclosure complaint, as noncompliance with these rules will not bar a pending foreclosure action.

At this stage in the proceedings, the court must merely inquire if sufficient factual allegations were pleaded in Cayman's complaint to indicate a plausible claim for relief of the breach of contract between Mortgagors and Cayman, as the holder of the note. Accepting as true Cayman's pleading that its "efforts to try and collect all outstanding amounts have been unsuccessful," along with the other pleadings alleged in the complaint stated above, there is a plausible claim under the *Twombly* and *Iqbal* standard for collection of the outstanding debt and for mortgage foreclosure. And this is so because Cayman's complaint sufficiently alleges an establishment of jurisdiction and venue, a description of the note executed by Mortgagors (a valid contract), a description of the mortgage, a description of the real property over which the mortgage was executed, an allegation that it is the owner and holder of the note, an allegation that Mortgagors are the owners of the mortgaged property, an allegation that Mortgagors defaulted on the loan repayment obligation (a breach), an explanation of the outstanding debt (damages), and a notice to Mortgagors that Cayman will file a *lis pendens* in the Registry of Property. Docket No. 1 at 3–4 ¶¶ 13–14. These are the material elements that, when accepted as true, plausibly give rise to

relief for the outstanding debt. Moreover, mortgagors have not cited any case law that holds a borrower must allege compliance with Regulation X in its foreclosure complaint to state a plausible claim for relief. These regulations provide for a private cause of action for borrowers, and the remedy is limited to actual damages, attorney's fees, and costs. They do not impose additional burdens at the pleading stage for servicers initiating foreclosure, though failure to abide by these regulations potentially subjects servicers to a claim under Regulation X.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of July, 2016.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge